DocuSign Envelope ID: 78060322-70BE-4429-9571-9A22FC86950293    Case 1:22-cv-04297-ALC-RWL    Document 1-1    Filed 05/25/22    Page 1 of 13

EXHIBIT A

**Master Services Agreement for Architecture Services**

This Master Services Agreement (this "**Agreement**"), dated as of _____ 5/13/2021 _____ (the "**Effective Date**"), is by and between WD Partners Inc., an Ohio corporation, with offices located at 7007 Discovery Blvd. Dublin, Ohio 43017 ("**Consultant**") and REEF Global Inc., a Delaware corporation, with offices located at 601 Brickell Key Drive, Suite 1000, Miami, FL 33131 ("**REEF**" and together with Consultant, the "**Parties**", and each a "**Party**"). The Parties agree as follows:

1. <u>Services</u>. Consultant will provide to REEF the architecture services (the "**Services**") set out in one or more statements of work signed by Consultant and REEF (each, a "**Statement of Work**"). The Services include any Deliverables. An example Statement of Work is attached hereto as Exhibit A. . Consultant will not perform any Services unless Consultant receives an approved purchase order from REEF. If Consultant performs without an approved purchase order, REEF may decline, without liability, to pay for such Services. In the event of a conflict between the terms of this Agreement and the terms of a Statement of Work, the terms of the applicable Statement of Work will control.

2. <u>Consultant Obligations</u>. Consultant will:

    2.1    Designate the employees or contractors that will fulfill the Services (collectively, the "**Consultant Representatives**"); provided, however the use of contractors to fulfill the Services requires the prior express written consent of REEF. Consultant will adequately manage and supervise all Consultant Representatives assigned to work under each Statement of Work. Consultant agrees that the Project Manager identified in each Statement of Work will personally oversee all Services provided under the Statement of Work and the Key Personnel identified in each SOW will perform the Services provided under the Statement of Work. Consultant will notify REEF of any anticipated change of the Project Manager or Key Personnel and will provide REEF an opportunity to interview, see the resumes of, and approve the proposed replacements the Project Manager and Key Personnel, at REEF's discretion. Consultant will use its best efforts to resolve any concerns of REEF relating to Consultant Representatives.

    2.2    Replace any Consultant Representatives at the reasonable request of REEF and Consultant will use its best efforts to promptly appoint a replacement.

    2.3    Assign only qualified, legally authorized Consultant Representatives to provide the Services.

    2.4    Provide or obtain all equipment, software, licenses, materials, and tools needed to perform the Services and provide any Deliverables.

    2.5    Ensure that it and the Consultant Representatives comply with all applicable laws, rules, and regulations in providing the Services, including, as applicable, those relating to advertising and marketing and data privacy and security.

    2.6    Be responsible for the acts and omissions of the Consultant Representatives as if such acts and omissions are of Consultant itself.

    2.7    Comply with all REEF rules, regulations, and policies of which it has been made aware by attachment to the applicable Statement of Work, in its provision of the Services.

    2.8    Maintain complete and accurate records relating to the provision of the Services under this Agreement. During the Term and for a period of 1 year thereafter, upon REEF's written request, Consultant will allow REEF or REEF's representative to inspect and make copies of such records and interview Consultant Representatives in connection with the provision of the Services; provided that REEF provides Consultant with reasonable advance written notice.

DocuSign Envelope ID: 3E060322-70BF-4429F1-9A2FC84FA423  Case 1:22-cv-04297-ALC-RWL   Document 1-1   Filed 05/25/22   Page 2 of 13

EXHIBIT A

3. <u>REEF Obligations</u>. REEF will take commercially reasonable steps to prevent any REEF-caused delays.

4. <u>Fees and Expenses</u>.

    4.1    Subject to Consultant's compliance with this Agreement, REEF will pay the fees specified in the applicable Statement of Work for the Services (the "**Fees**"). Except as provided in Section 4.2, the Fees constitute Consultant's complete compensation for the Services, and REEF is not responsible for any other fees or charges in connection with the Services or otherwise under this Agreement. REEF will pay undisputed Fees within sixty (60) days of receipt by REEF of an itemized invoice from Consultant accompanied by documentation reasonably requested by REEF evidencing all charges. Reef will not pay for any Fees that are not invoiced within six (6) months after the Services rendered.

    4.2    REEF will reimburse Consultant for reasonable expenses incurred in accordance with the Statement of Work, within sixty (60) days of receipt by REEF of an invoice from Consultant accompanied by receipts and reasonable supporting documentation; provided, however, any such expenses must be pre-approved in writing by REEF and, as applicable, comply with REEF's travel policy.

    4.3    The Fees set forth in this Agreement will include all sales and use taxes, duties, and charges of any kind imposed by any federal, state, or local governmental authority on amounts payable by REEF under this Agreement. In no event will REEF be required to pay any additional amount to Consultant in connection with such taxes, duties, and charges, or any taxes imposed on, or regarding, Consultant's income, revenues, gross receipts, personnel, or real or personal property or other assets.

5. <u>Warranties</u>.

    5.1    <u>Consultant</u>. Consultant represents and warrants that it will perform the Services: (a) in accordance with the terms and subject to the conditions set out in the respective Statement of Work and this Agreement, (b) using Consultant Representatives of commercially reasonable skill, experience, and qualifications, and (c) in a timely, workmanlike, and professional manner in accordance with generally recognized industry standards for the same or similar services. Consultant further represents and warrants that: (d) the Deliverables and REEF's use thereof will not infringe or misappropriate the Intellectual Property Rights of any third party; (e) the Deliverables will conform to and perform in accordance with REEF's requirements set forth on the applicable Statement of Work; (f) it is duly organized, validly existing and in good standing under the laws of the jurisdiction in which the business is organized; (g) it has all necessary rights, licenses, consents, and authorizations to enter into this Agreement on behalf of itself, and to perform its obligations, exercise its rights, and grant the licenses granted under this Agreement; (h) no Consultant Representatives will be deemed the employees or joint employees of REEF; (i) it is not in violation or breach of, and will not conflict with or constitute a default under, any material contract, agreement or commitment binding upon it and will not conflict with or violate in any material manner, any applicable law, rule, regulation, judgment, order or decree of any government, governmental instrumentality or court having jurisdiction over Consultant; (j) it will comply with all laws applicable to its business and the performance of the Services, including anti-bribery laws and insider trading laws; (k) it and the Consultant Representatives have or, at such time as they are required, shall have, all licenses, permits, certifications, credentials, authorizations and other qualifications that are necessary to perform the Services or are otherwise advisable to perform the Services in conformity with industry standard practices; and (l) it shall devote adequate resources to meet its obligations under this Agreement and any Statement of Work.

    5.2    <u>REEF</u>. REEF represents and warrants that it is duly organized, validly existing, and in good standing under the laws of the jurisdiction in which the business is organized, and that that: (a) all content, materials, and other information provided or otherwise made available by REEF or its representatives to Consultant for Consultant's use in the performance of the Services including without limitation REEF designs and REEF Confidential Information (collectively, "**REEF Content**") do not, and Consultant's use thereof in the performance of the Services as provided in the Agreement will not infringe or misappropriate the Intellectual Property Rights of any third party;

DocuSign Envelope ID: 3E060322-708F-04A297-9A2FC34FRW23   Case 1:22-cv-04297-ALC-RWL   Document 1-1   Filed 05/25/22   Page 3 of 13

EXHIBIT A

and (b) REEF has the full right, power and authority to provide and make available such REEF Content to Consultant for Consultant's use in the Services and as otherwise provided in the Agreement, and notwithstanding anything to the contrary, REEF hereby grants Consultant all rights necessary in such REEF Content to use in the performance of the Services. Notwithstanding anything to the contrary, REEF hereby agrees to indemnify, hold harmless, and defend Consultant from and against all claims, damages and expenses (including attorney's fees) arising out of REEF's breach of the representations, warranties, and covenants set forth in the preceding sentence. REEF acknowledges that any representation made by Consultant with respect to the Deliverables or Services under the Agreement does not extend to REEF Content, if any, embedded, incorporated, or otherwise used therein.

    5.3    REEF AND CONSULTANT MAKE NO WARRANTIES EXCEPT FOR THAT PROVIDED IN THIS SECTION 5. ALL OTHER WARRANTIES, EXPRESS AND IMPLIED, ARE EXPRESSLY DISCLAIMED BY THE PARTIES.

6.    <u>Intellectual Property</u>.

    6.1    <u>Consultant Intellectual Property Rights</u>.  Consultant owns all Intellectual Property Rights in Consultant Intellectual Property Rights.  "Consultant Intellectual Property Rights" is defined as (a) all Intellectual Property Rights created or licensed by Consultant prior to or outside the Services, (b) all Intellectual Property Rights created or licensed by Consultant independent of the Services, including without limitation all Consultant models, templates, designs, ideas, trade secrets, trademarks, copyrights, know-how and other proprietary information and (c) any modifications to the Intellectual Property Rights described in (a) and (b) above.  Consultant grants to REEF an irrevocable, nonexclusive, paid up license to use, copy, distribute, execute, perform, sublicense, prepare derivative works of all Consultant Intellectual Property Rights necessary to receive and use the Services and Deliverables.

    6.2    <u>REEF Intellectual Property Rights</u>.  REEF owns all Intellectual Property Rights in REEF Intellectual Property Rights.  "REEF Intellectual Property Rights" is defined as (a) all Intellectual Property Rights created or licensed by REEF prior to or outside the Services, (b) all Intellectual Property Rights created or licensed by REEF independent of the Services, (c) except with respect to Consultant Intellectual Property Rights, all Intellectual Property Rights created or licensed by REEF as part of the performance of the Services, or (d) any modifications to the intellectual property rights described in (a), (b) and (c) above.

    6.3    <u>Ownership of Deliverables</u>. Notwithstanding Section 6.1, REEF owns and Consultant hereby assigns to REEF all right, title, and interest, including all Intellectual Property Rights, in and to the Deliverables. Under no circumstances will Consultant as a result of this Agreement, obtain any ownership interest or other right, title, or interest in or to the Deliverables or other Intellectual Property Rights of REEF. Notwithstanding anything to the contrary, REEF acquires no interest under this Agreement in or to any Consultant Intellectual Property Rights, except in the form of a limited license to use Consultant Intellectual Property Rights embedded in the Deliverables, to the extent necessary to use and enjoy such Deliverable for REEF's business purpose.

    6.4    <u>Work Made for Hire; Assignment</u>. Consultant acknowledges and agrees that any and all Deliverables that may qualify as "work made for hire" as defined in the Copyright Act of 1976 (17 U.S.C. § 101) is hereby deemed "work made for hire" for REEF and all copyrights therein will automatically and immediately vest in REEF. To the extent that any Deliverables do not constitute "work made for hire," Consultant hereby irrevocably assigns to REEF and its successors and assigns, for no additional consideration, Consultant's entire right, title, and interest in and to the Deliverables and all Intellectual Property Rights therein, including the right to sue, counterclaim, and recover for all past, present, and future infringement, misappropriation, or dilution thereof, and all rights corresponding thereto throughout the world.

    6.5    <u>Applications for Patent and Registration of Intellectual Property Rights</u>. Consultant acknowledges and agrees that, as between REEF on the one hand and Consultant and its Affiliates on the other, REEF has the exclusive right (but not any obligation), in its sole discretion, to file and prosecute any patent application for or application for registration of any Intellectual Property Rights in the Deliverables and maintain any resulting issuance or

registration. Consultant and its Affiliates will not file any such application, during the Term or at any time thereafter, unless specifically authorized by REEF in writing to do so on REEF's behalf. In the event any such application is filed in Consultant's or its Affiliate's name, Consultant or its Affiliate, as applicable, hereby irrevocably assigns to REEF and its successors and assigns, for no additional consideration, such entire right, title, and interest in and to such application, all Intellectual Property Rights disclosed or claimed therein, and any patent or registration issuing or resulting therefrom.

6.6  Further Assurances; Power of Attorney. During and after the Term, Consultant will reasonably cooperate with REEF to (a) apply for, obtain, perfect, and transfer to REEF the Deliverables and any and all Intellectual Property Rights and (b) maintain, protect, and enforce the same, including giving testimony and executing and delivering to REEF any and all applications, oaths, declarations, affidavits, waivers, assignments, and other documents and instruments as may be requested by REEF. Consultant hereby grants REEF a limited and irrevocable power of attorney, coupled with an interest, to execute and deliver any such documents on Consultant's behalf in its name and to do all other lawfully permitted acts to transfer legal ownership of the Deliverables to REEF and further the transfer, prosecution, issuance, registration, and maintenance of all Intellectual Property Rights therein, to the extent permitted by applicable law, if Consultant does not promptly cooperate with REEF's request (without limiting the rights REEF will have in such circumstances by operation of law).

6.7  No Limitation. Notwithstanding anything in this Agreement, neither party will be impaired from developing, or having developed, or using or otherwise exploiting any business processes, software, hardware or other technology that performs functions that are the same as or are similar to those contained in the other party's products and services so long as such party is not in breach of its confidentiality obligations hereunder.

6.8  Restrictions. During the term of the Agreement and for six (6) months thereafter, Consultant personnel and Consultant Representatives who provide the Services to REEF may not provide similar services to any customer of Consultant that provide similar services to any customer of Consultant that is using vessels, trailers, trucks or containers to facilitate the design and implementation of a customer facing retail, kitchen, or other commercial activity.

6.9  Definitions. "**Intellectual Property Rights**" means any and all rights arising in the United States or any other jurisdiction throughout the world in and to (a) trademarks, service marks, trade dress, trade names, logos, corporate names, and domain names, and other similar designations of source or origin, together with the goodwill symbolized by any of the foregoing, (b) copyrights and works of authorship (whether copyrightable or not), (c) patents, patent disclosures, and inventions (whether patentable or not), (d) trade secrets, know-how, and other confidential or proprietary information, and (e) all other intellectual property, in each case whether registered or unregistered, and including all registrations and applications for such rights and renewals or extensions thereof, and all similar or equivalent rights or forms of protection in any part of the world. "**Deliverables**" means any deliverables, information, data, content (in any form, including text-based, graphical, interactive, mobile, video, audio, or rich media), writings, technology, inventions, discoveries, processes, techniques, methods, ideas, concepts, research, proposals, and any other materials and items of any nature whatsoever, that are created, manufactured, prepared, produced, authored, edited, modified, conceived, or reduced to practice by or on behalf of Consultant solely or jointly with REEF or others (y) in the course of Consultant performing its obligations under this Agreement or (z) at any time during the Term based on, derived from, or otherwise using REEF's Confidential Information, and all printed, physical, and electronic copies and other tangible embodiments of any of the foregoing.

7.  Confidentiality. From time to time during the Term of this Agreement, either Party (as the "**Disclosing Party**") may disclose or make available to the other Party (as the "**Receiving Party**") non-public information of Disclosing Party regardless of the form in which it is provided and that is either labeled as "confidential" or under the circumstances, a reasonable person would consider such information to be confidential ("**Confidential Information**"); provided, however,

DocuSign Envelope ID: A906032E-70B7-44A6-8979-21E886FE0A9B   Case 1:22-cv-04297-ALC-RWL   Document 1-1   Filed 05/25/22   Page 5 of 13

EXHIBIT A

that Confidential Information does not include any information that: (a) is or becomes generally available to the public other than as a result of Receiving Party's breach of this Section 7, (b) is or becomes available to the Receiving Party on a non-confidential basis from a third-party source, provided that such third party is not and was not prohibited from disclosing such Confidential Information, (c) was in Receiving Party's possession prior to Disclosing Party's disclosure hereunder, or (d) was or is independently developed by Receiving Party without using any Confidential Information. The Receiving Party will: (x) protect and safeguard the confidentiality of the Disclosing Party's Confidential Information with at least the same degree of care as the Receiving Party would protect its own Confidential Information, but in no event with less than a commercially reasonable degree of care, (y) not use the Disclosing Party's Confidential Information, or permit it to be accessed or used, for any purpose other than to exercise its rights or perform its obligations under this Agreement, and (z) not disclose any such Confidential Information to any person or entity, except to the Consultant Representatives or the Receiving Party's Group who need to know the Confidential Information to assist the Receiving Party, or act on its behalf, to exercise its rights or perform its obligations under this Agreement. Consultant is responsible for the compliance of Consultant Representatives and its Receiving Party's Group with the obligations of this Section 7.

If the Receiving Party is required by applicable law or legal process to disclose any Confidential Information, it will, prior to making such disclosure, use commercially reasonable efforts to notify Disclosing Party of such requirements to afford Disclosing Party the opportunity to seek, at Disclosing Party's sole cost and expense, a protective order or other remedy. For purposes of this Section 7 only, "**Receiving Party's Group**" means the Receiving Party's Affiliates and its or their employees, officers, directors, shareholders, agents, subcontractors, attorneys, accountants, and financial advisors who have entered into confidentiality terms materially similar to those of this Section 7.

8.  Term, Termination, and Survival.

    8.1   This Agreement will commence as of the Effective Date and will continue until terminated pursuant to this Agreement (the "**Term**"). Each Statement of Work will have its own term as set forth in such Statement of Work ("**SOW Term**").

    8.2   REEF may terminate this Agreement (including any outstanding Statements of Work) for convenience upon 30 days prior written notice and may terminate any Statement of Work for convenience upon 10 days prior written notice. Consultant may terminate this Agreement for convenience upon 30 days prior written notice if all Services have been fully performed.

    8.3   Either Party may terminate this Agreement, effective upon written notice to the other Party (the "**Defaulting Party**") if the Defaulting Party:

    (a)   materially breaches this Agreement, and such breach is incapable of cure, or with respect to a material breach capable of cure, the Defaulting Party does not cure such breach within 30 days after receipt of written notice of such breach; or

    (b)   the institution by or against Consultant of insolvency, receivership, or bankruptcy proceedings or any other proceedings for the settlement of its debts, (c) Consultant's making an assignment for the benefit of creditors, or (d) Consultant's dissolution or ceasing to do business.

    8.4   Upon termination of this Agreement or any Statement of Work for any reason, REEF will pay Consultant the Fees, pro-rated, if applicable, for the Services completed up to the effective date of such termination, including without limitation all reimbursable expenses set incurred as set forth in the applicable Statement of Work and as otherwise owed pursuant to Section 4.2, as of the effective date of such termination.

    8.5   Sections 2, 5, 6, 7, 8, 9, 10, 11, 22, 23, and 24 of this Agreement will survive the expiration or termination of this Agreement.

9. **LIMITATIONS OF LIABILITY.**

    9.1    IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ANY LOSS OF USE, REVENUE, OR PROFIT OR LOSS OF DATA OR DIMINUTION IN VALUE, OR FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, EXEMPLARY, SPECIAL, OR PUNITIVE DAMAGES WHETHER ARISING OUT OF BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, REGARDLESS OF WHETHER SUCH DAMAGE WAS FORESEEABLE AND WHETHER OR NOT A PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, AND NOTWITHSTANDING THE FAILURE OF ANY AGREED OR OTHER REMEDY OF ITS ESSENTIAL PURPOSE.

    9.2    TO THE FULLEST EXTENT PERMISSIBLE BY LAW, EACH PARTY'S AGGREGATE LIABILITY ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT WILL NOT EXCEED THE GREATER OF (I) ONE MILLION DOLLARS ($1,000,000) OR (II) TOTAL FEES PAID OR PAYABLE BY REEF TO CONSULTANT UNDER THIS AGREEMEN.

    9.3    SECTIONS 9.1 AND 9.2 DO NOT APPLY TO DAMAGES ARISING OUT OF (I) THE INDEMNIFICATION OBLIGATIONS; (II) BREACHES OF CONFIDENTIALITY OR LAW; (III) WILLFUL MISCONDUCT, GROSS NEGLIGENCE, OR FRAUD; OR (IV) DAMAGES TO PERSONAL PROPERTY OR PERSONAL INJURY TO THE EXTENT CAUSED BY THE ACTS OR OMISSIONS OF CONSULTANT.

10.    <u>Indemnification</u>. Consultant will indemnify, defend, and hold harmless REEF, its Affiliates, and its and their officers, directors, employees, agents, successors, and assigns against any liability, damage, loss, or expense (including reasonable attorneys' fees and expenses of litigation) in connection with any third party claim, suit, action, demand, or judgment arising from or in connection with: (a) Consultant's performance of the Services, (b) Consultant's actual or alleged breach of this Agreement, (c) the Deliverables or Service infringe or misappropriate the Intellectual Property Rights of any third party, (d) negligence or willful misconduct of Consultant in connection with this Agreement, or (e) the Consultant Representatives, including any wage and hour or misclassification claims or enforcement actions. Consultant will not enter into any settlement without REEF's prior written consent, which will not be unreasonably withheld. REEF (at its cost) may participate in the defense and settlement with counsel of its own choosing. Consultant's duty to indemnify under this section is independent from its other obligations under this Agreement.

11.    <u>Remedies</u>.

    11.1    If Consultant violates any provision of this Agreement, REEF will, in addition to any damages to which it is entitled, be entitled to immediate injunctive relief against Consultant prohibiting further actions inconsistent with Consultant's obligations under this Agreement.

    11.2    In the event Consultant fails to satisfactorily perform any of the Services on a timely basis, REEF will have the right, without prejudice to any other rights or remedies it may have under this Agreement or any applicable Statement of Work, to take one or more of the following steps:

    (a)    Suspend Consultant's right and obligation to complete its performance of the Services until such time as Consultant is able to demonstrate to Company's reasonable satisfaction that it can satisfactorily meet its obligations under this Agreement;

    (b)    Assign one or more of its representatives to supervise and work with Consultant to correct and mitigate the effects of Consultant's breach; or

12.    <u>Insurance</u>. Consultant will at all times during the Term carry the following insurance coverages with insurers with an AM Best rating of at least A-VIII: as attached hereto as Exhibit CThe certificate of insurance will name REEF as an

DocuSign Envelope ID: 7B0D322-70BF-4429F-92E634-RW23   Case 1:22-cv-04297-ALC-RWL   Document 1-1   Filed 05/25/22   Page 7 of 13

EXHIBIT A

additional insured. Failure of REEF to request such certificates of insurance or other evidence of full compliance with the insurance requirements or failure of REEF to identify a deficiency will not be construed as a waiver of Consultant's obligation to purchase and maintain such insurance. These policies shall contain Waivers of Subrogation and should be primary and non-contributory and include a cross liability/severability of interest clause.

13. <u>Entire Agreement</u>. This Agreement, including any Statements of Work, exhibits, schedules, attachments and appendices, constitutes the sole and entire agreement of the Parties with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, regarding such subject matter. In the event of any conflict between this Agreement and a Statement of Work, the Statement of Work will control to the extent of the conflict.

14. <u>Notices</u>. All notices, requests, consents, claims, demands, waivers and other communications under this Agreement (each, a "**Notice**") must be in writing and addressed to the other Party at its address set forth below (or to such other address that the receiving Party may designate from time to time in accordance with this Section). Unless otherwise agreed herein, all Notices must be delivered by personal delivery, nationally recognized overnight courier, or certified or registered mail (in each case, return receipt requested, postage prepaid). Except as otherwise provided in this Agreement, a Notice is effective only (a) on receipt by the receiving Party; and (b) if the Party giving the Notice has complied with the requirements of this Section.

Notice to REEF:	REEF Global Inc.
	Attn: Legal Department
	601 Brickell Key Drive
	Suite 1000
	Miami, FL 33131

Notice to Consultant:	[CONSULTANT ADDRESS]
	Attention: [TITLE OF OFFICER TO RECEIVE NOTICES]

15. <u>Severability</u>. If any term or provision of this Agreement is found by a court of competent jurisdiction to be invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability will not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon a determination that any term or provision is invalid, illegal or unenforceable, the court may modify this Agreement to effect the original intent of the Parties as closely as possible in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

16. <u>Amendments</u>. No amendment to or modification of this Agreement is effective unless it is in writing, identified as an amendment to this Agreement and signed by each Party.

17. <u>Waiver</u>. No waiver by any Party of any of the provisions of this Agreement will be effective unless explicitly set forth in writing and signed by the Party so waiving. Except as otherwise set forth in this Agreement, no failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement will operate or be construed as a waiver thereof, nor will any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

18. <u>Assignment</u>. Unless otherwise expressly state in the applicable Statement of Work, Consultant will not assign, transfer, delegate or subcontract any of its rights or delegate any of its obligations under this Agreement without the prior written consent of REEF. Any purported assignment or delegation in violation of this Section will be null and void. No assignment or delegation will relieve Consultant of any of its obligations under this Agreement. REEF may (a) perform any of its obligations or exercise any of its rights under this Agreement through one or more of its Affiliates and (b)

DocuSign Envelope ID: 7B06032B-70BE-4429-9719-22FC86B50203
Case 1:22-cv-04297-ALC-RWL    Document 1-1    Filed 05/25/22    Page 8 of 13

EXHIBIT A

assign this Agreement to an Affiliate or in connection with any merger, reorganization, sale of all or substantially all of REEF's assets, or any similar transaction. "**Affiliate**" means with respect to any entity, any other entity that directly or indirectly controls, is controlled by, or is under common control with such entity. This Agreement is binding on, inures to the benefit of, and is enforceable by the Parties to this Agreement and their respective permitted successors and permitted assigns.

19. <u>Relationship of the Parties</u>. The relationship between the Parties is that of independent contractors. Consultant will be solely responsible for supervising, controlling and directing the details and manner of the completion of the Services. The Services must meet REEF's final approval and will be subject to REEF's general right of inspection throughout the performance of the Services and to secure satisfactory final completion. Nothing contained in this Agreement will be construed as creating any agency, partnership, joint venture or other form of joint enterprise, employment or fiduciary relationship between the parties, and neither party will have authority to contract for or bind the other party in any manner whatsoever.

20. <u>Interpretation</u>. Whenever used in this Agreement, unless otherwise specified: (a) the terms "includes," "including," "e.g.," "for example," "for instance," "such as," and other similar terms are deemed to include the term "without limitation" immediately thereafter; (b) the phrases "REEF may," "REEF will determine," and other similar terms mean REEF may decide the applicable matter in its sole discretion; and (c) the terms "$" and "dollars" refers to US dollars.

21. <u>Publicity</u>. Consultant may not issue any press release or make any public statement related to this Agreement or use REEF's name, trademarks or logo, in any way (including in promotional material) without REEF's advance written permission, or misrepresent or embellish the relationship between the Parties in any way.

22. <u>Choice of Law</u>. This Agreement and all related documents and all matters arising out of or relating to this Agreement, whether sounding in contract, tort, or statute are governed by, and construed in accordance with, the laws of the State of New York, United States of America, without giving effect to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the State of New York. The Parties hereby submit to the exclusive jurisdiction of the state and Federal courts located in the County of New York, State of New York.

23. <u>WAIVER OF JURY TRIAL</u>. EACH PARTY ACKNOWLEDGES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

24. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which is deemed an original, but all of which together are deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email, or other means of electronic transmission is deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

25. <u>Force Majeure</u>. Neither Party will be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such Party can affirmatively demonstrate such delay or failure arises directly due to an event beyond its reasonable control, including any act of God, act of war or terrorism, earthquakes, floods, fire, power or internet failure, to the extent any such event causes such delay or failure (each, a "**Force Majeure Event**"), provided that failures or delays related to the performance or non-performance of Consultant's suppliers, vendors, or other third parties will not constitute a Force Majeure Event. A Force Majeure Event will extend a Party's time for performance only by the length of time such Force Majeure Event continues. A Party experiencing a Force Majeure Event will promptly notify the other Party, will take prompt commercially reasonable steps to abate, eliminate and correct the Force Majeure Event as soon as reasonably possible and will resume performance as soon as the Force Majeure Event has abated or been corrected or eliminated.

[SIGNATURE PAGE FOLLOWS]

DocuSign Envelope ID: B306022E-70BF-442983B1A-22E6d66E0293    Case 1:22-cv-04297-ALC-RWL    Document 1-1    Filed 05/25/22    Page 10 of 13

EXHIBIT A

The Parties have executed this Agreement as of the Effective Date.

**REEF**

By: *Aziz Ihsanoglu* (DocuSigned by: CA5F03ACEC59484...)
Name: Aziz Ihsanoglu
Title: Director
Date: 5/13/2021

**CONSULTANT**

By: *Jim Britta*
Name: JIM BRITTON
Title: CFO
Date: 5/19/2021

**EXHIBIT A – Form Statement of Work**

**STATEMENT OF WORK #1**

This Statement of Work ("**SOW**"), dated and effective as of _____ ("**SOW Effective Date**"), is entered into between REEF Global Inc. ("**REEF**") and _____, a _____, ("**Consultant**"). This SOW is subject to and part of the Master Services Agreement ("**Agreement**"), with an effective date of _____, between the Parties. All capitalized terms not defined herein have the meaning given to them in the Agreement. The Parties agree as follows:

1. <u>Description of Service and Deliverables and Due Dates.</u>

2. <u>Fees</u>.

3. <u>SOW Term</u>.

IN WITNESS WHEREOF, the Parties hereto have caused this SOW to be executed as of the SOW Effective Date by their respective officers thereunto duly authorized.

**REEF**

By: _____

  Name:
  Title:
  Date:

**CONSULTANT**

By: _____

  Name:
  Title:
  Date:

DocuSign Envelope ID: ZB060222-70BF-4299-1A2-2C64B0A0293  Case 1:22-cv-04297-ALC-RWL   Document 1-1   Filed 05/25/22   Page 12 of 13

EXHIBIT A

**EXHIBIT B - SIG Questionnaire**

DocuSign Envelope ID: 7B16022E-70BF-4297-A12C-RWL293
Case 1:22-cv-04297-ALC-RWL   Document 1-1   Filed 05/25/22   Page 13 of 13

EXHIBIT A

**EXHIBIT C – Certificate of Insurance**

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY): 1/28/2021

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

**PRODUCER**
Huntington Insurance, Inc.
37 W. Broad Street
Columbus OH 43215

**CONTACT NAME:** Julie Wahlenmaier
**PHONE (A/C, No, Ext):** 614-899-8214
**FAX (A/C, No):** 877-904-5857
**E-MAIL ADDRESS:** Julie.Wahlenmaier@Huntington.com

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A: Continental Casualty Co | 20443 |
| INSURER B: Lloyd's of London | |
| INSURER C: Everest National Insurance Com | 10120 |
| INSURER D: Transportation Insurance Co | 20494 |
| INSURER E: Continental Insurance Co | 35289 |
| INSURER F: | |

**INSURED**
WD Partners, Inc.
7007 Discovery Blvd
Dublin OH 43017

**COVERAGES**   CERTIFICATE NUMBER: 1274444373   REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY<br>CLAIMS-MADE  X OCCUR | | | 6075832174 | 1/1/2021 | 1/1/2022 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $1,000,000 |
| | | | | | | | MED EXP (Any one person) | $15,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $5,000,000 |
| | POLICY X PRO- JECT  X LOC<br>OTHER | | | | | | PRODUCTS - COMP/OP AGG | $5,000,000 |
| | | | | | | | | $ |
| D | AUTOMOBILE LIABILITY<br>X ANY AUTO<br>OWNED AUTOS ONLY / SCHEDULED AUTOS<br>HIRED AUTOS ONLY / NON-OWNED AUTOS ONLY | | | 6075832188 | 1/1/2021 | 1/1/2022 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| E | X UMBRELLA LIAB  X OCCUR<br>EXCESS LIAB  CLAIMS-MADE<br>DED  X RETENTION $ | | | 6075832210 | 1/1/2021 | 1/1/2022 | EACH OCCURRENCE | $10,000,000 |
| | | | | | | | AGGREGATE | $10,000,000 |
| | | | | | | | | $ |
| A<br>A<br>A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY  Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | N | N/A | 6075832174*<br>6075832191<br>6075832207-California | 1/1/2021<br>1/1/2021<br>1/1/2021 | 1/1/2022<br>1/1/2022<br>1/1/2022 | X PER STATUTE  X OTH- ER | *OH/WA EL Only |
| | | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $1,000,000 |
| B<br>C | Cyber Liability<br>Professional Liability E&O | | | ESJ0025497998<br>PLSE000633201 | 1/1/2021<br>1/1/2021 | 1/1/2022<br>1/1/2022 | 5,000,000/5,000,000<br>2,000,000/2,000,000 | Ded 10,000<br>Ded 250,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
** Certificate issued for informational purposes only**

**CERTIFICATE HOLDER**
** For Informational Purposes Only**
Confers no rights upon any specific holder

**CANCELLATION**
SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

AUTHORIZED REPRESENTATIVE: *Matt Kister* (signature)

© 1988-2015 ACORD CORPORATION. All rights reserved.
ACORD 25 (2016/03)   The ACORD name and logo are registered marks of ACORD